WM. WARDEN et als. v. NARCISSA McKINNON, Administratrix.

*Special proceeding—Creditor's bill—Statute of Limitations—*
*Parties.*

1. A special proceeding, begun by way of a creditor's bill, for the settlement of the estate of a decedent and payment of his debts, continues until all the debts are discharged and there is a final judgment, and is not terminated by being left off the docket.

2. When such proceeding is allowed to drop from the docket without a final judgment being rendered, it may be brought forward on motion, to the end that unpaid creditors may assert their rights, and the proceedings be determined according to law.

3. When such motion is made, it should, strictly, be disposed of, before contested debts are put in issue. But when no objection is made, both questions may be disposed of at the same time.

4. The filing of a claim with the Clerk, by a creditor, gives him a standing in Court, in such proceeding, and is all he is required to do, unless the claim is contested.

5. If the administrator intends to contest any claim, he should do so when it is filed with the Clerk.

6. The litigation in respect to such contested claims is collateral to the special proceeding, and the termination of such collateral litigation does not terminate the special proceeding.

7. When a claim against an estate is filed with the Clerk, before whom such proceeding is commenced, the statute of limitations ceases to run against such claim from the time it was filed.

8. This special proceeding is equitable in its character, and the Court having general jurisdiction of the parties and subject matter, may make the next of ·kin and heirs-at-law parties, and compel the former to account for the personal property received by them, first, and then, if necessary, may order the real property to be sold to make assets to pay debts; or if the heir has sold the land and has the proceeds, the Court may compel an appropriation of the same, if it shall appear that the land was liable.

(*Brittain* v. *Mull*, 91 N. C., 498; *Dobson* v. *Simonton*, 93 N. C., 268, and *Jones* v. *Desern*, *ante*, 32, cited and approved).

SPECIAL PROCEEDING, in the nature of a creditor's bill, commenced before the Clerk of the Superior Court of CUMBERLAND county, and tried before *MacRae, Judge,* at November Term, 1885, of the Superior Court for said county.

The facts are as follows:

It appears that on the 16th day of May, 1860, Murdock McKinnon executed to Mildred Barclay, his single bond for $245.46, to be due one day after date.

The said Mildred died in the year 1862, in the county of Harnett, leaving a last will and testament, which was duly proven, and Leocadia J. Barclay and Kezia Barbee qualified as executrixes thereof.

The said Murdock McKinnon died intestate, in the county of Cumberland, in December, 1872, and William H. McKinnon was appointed and qualified as administrator of his estate. Afterwards, the latter was removed as administrator, and Narcissa McKinnon, on the 29th day of January, 1880, was, in his stead, appointed administratrix *de bonis non.* On the 27th day of April, 1876, William Warden, suing in behalf of himself and all other creditors of the said intestate, brought his special proceeding, as allowed by the statute, (Bat. Rev., ch. 45, §73), in the Superior Court of said county of Cumberland, against the said William H. McKinnon, while he was so administrator, to compel an account of his administration, and the payment of debts due such creditors respectively.

In that proceeding, sundry creditors presented their respective demands against the estate of the intestate, to the Clerk of the Court, the validity of which, with one exception presently to be mentioned, was contested by the administrator, and in respect to the same, issues of fact and law were raised, and litigation in that respect pended for several years, and until Fall Term, 1882, of the last named Court. These claims, or the most of them, were adjusted, and as to each, the entry, "*matter arranged,*" was made on the docket of the Court. The litigation, in respect to the last of these claims, was ended at Spring Term, 1883, of the Court. The administratrix *de bonis non* mentioned, was made a party defendant to said proceeding, shortly after her appointment.

By some arrangement, such of the demands mentioned, as were established, were discharged by the administratrix last mentioned.

The Clerk did not take and state an account of the dealings of the administrator with the estate, nor was there any notice to parties to appear and except, if they should see fit, to any report. There was no final judgment in the proceeding, nor does it appear from the record that there was any order terminating or dismissing it from the current docket of the Court; but the appellants recite in their answer, rather than aver, that it "had been disposed of and dismissed from the docket." This does not appear from the record.

Afterwards, some time in the month of June, 1883, the appellees, as executrixes of the will of the said Mildred Barclay, deceased, filed their petition in the said Superior Court, "to re-open and rehear, and for other relief," the special proceeding above mentioned, in which they alleged in substance, that the first above named administrator, William H. McKinnon, well knew of the said bond of his intestate, made to their testatrix—that he told them there was no contest about it, and he referred them to his counsel, who also informed them that it could not be paid pending the creditor's bill, but there was no contest over this note, and directed them to file it, or a copy of it, with the Clerk, in the said special proceeding, stating that there was no necessity for a suit, and that the note would be paid at the end of said proceeding—that accordingly, the Attorney of appellants, "took the said note to Alex. McPherson, the then Clerk, and delivered it to him, to be filed in the proceeding as a claim against the estate of Murdock McKinnon, dec'd, and the said Clerk made out a copy, to be placed on file, and retained the copy, and returned the note to the Attorney—that afterwards the copy of the note, and the bond itself were lost—that the appellant administratrix had knowledge of the note—that repeatedly the appellees had been assured, pending the said proceedings, that the bond would, at the end thereof, be paid, &c., &c. The appellees also caused a summons to be issued, to make the next-of-kin and heirs-at-law of the said Murdock McKinnon, parties defendant to their said petition, and parties to the said

special proceeding, and they appeared and answered the petition, admitting some of the allegations therein, and denying others;— denying the note—that it was filed in the proceeding as alleged &c., &c.

Afterwards the Clerk of the Court, having heard the petition, answer, and affidavits, made an order, whereof the following is a copy :

" Petition in the cause, to reopen and rehear, and for other relief, under §133 C. C. P., filed by Leocadia J. Barclay and Kezia S. Barbee, ex's of Mildred Barclay, one of the creditors of Murdock McKinnon dec'd, v. Narcissa McKinnon, adm'x *de bonis non* of Murdock McKinnon, dec'd, and the heirs-at-law and distributees of Murdock McKinnon, dec'd, viz : H. B. Butler and wife Narcissa, Susan T. McKinnon, William H. Mc-Kinnon and Martha McKinnon and Thos. H. Sutton, Esq., commissioner to sell for partition.

" This petition coming on to be heard, upon service of the summons and copy of petition, by way of notice to show cause, upon all the parties, on the 19th July, 1883, and being heard upon the petition, answers and affidavits and exhibits filed, after full argument from counsel representing the parties on both sides, it is considered by the Court, that the petitioners are entitled to the relief asked for, on the ground that their testatrix is an omitted creditor of Murdock McKinnon, dec'd, upon a claim against his estate, filed in the original special proceeding above entitled in 1876, and the Court is of the opinion and so declares, that the petitioners have merits, and that injustice has been done them, without laches on their part, in the omission of their claim from the account and settlement in the said special proceeding, after having been filed therein with Alex. McPherson, Esq., the former Clerk of this Court.

" It is therefore adjudged and decreed, that said special proceeding be reopened and reheard, with leave to the petitioners to re-file the evidence of their said claim, alleged to be a note under seal for $235.46, signed by Murdock McKinnon, and payable

to Mrs. M. Barclay, with interest from one day after date, May 16th, 1860, said note being now lost, and it appearing from the answer of the defendants to the petition, that the petitioners' claim is contested, the petitioners are directed to file their complaint, and the defendants their answer thereto, on said claim, in this office, and the issues joined, are directed to be transferred to the Superior Court docket for trial, at Term, before the Judge.

"It is further adjudged and decreed, that the interlocutory order of sale made by the Court, on May 9th, 1883, in an *ex parte* special proceeding before the Clerk, instituted by the defendants, the heirs-at law of Murdock McKinnon, dec'd, for a sale for . partition among his heirs, of the real estate mentioned therein, to-wit: the store house and lot No. 47, on Person St., in Fayetteville, and in which order the defendant Thos. H. Sutton, Esq., was appointed commissioner to conduct the sale, and make report thereof to this Court, be modified to this extent, viz., the said Thomas H. Sutton, Esq., is hereby directed, after selling said property for cash, at public sale, to pay into the office of this Court, seven hundred dollars of the proceeds of said sale, immediately thereafter, to be applied to the satisfaction of petitioners' claim, should it eventually be established, it having been made to appear to the Court, that the personalty in the hands of the administratrix *de bonis non* of Murdock McKinnon, is exhausted, and that she is without assets, upon a settlement had by her with the children of Murdock McKinnon, who are his distributees and heirs-at-law.

"From the foregoing order and judgment, the defendants, the heirs of M. McKinnon, deceased, and Thomas H. Sutton, commissioner, crave an appeal to the Superior Court; appeal craved in open Court; appeal granted; notice of appeal waived this 19th July, 1883."

Thereupon the appellees filed their complaint in the proceeding against the appellants, the administratrix, next-of-kin, and heirs-at-law of the said intestate, in which they alleged that the said bond had not been paid—that the same was still due and owing

to them—that it had been lost, &c.; that the personal estate of the intestate, of less value than $100, had been distributed to the next-of-kin—that the intestate died seized of real estate, more than sufficient in value to pay the said debt, &c.; and they demanded judgment for the amount of the debt, for general relief, and for costs.

The appellants filed their answer to this complaint, and the following is a copy of the material parts thereof:

" 5. That the administration of the estate of Murdock McKinnon has been finally completed, the distributees' shares having been paid out, and final settlement made with the proper persons, on the 9th May, 1883. That public advertisement was made by the administrator on the 15th of January, 1873; that refunding bonds were taken; that the creditors' bill was filed April 27th, 1876, and public advertisement of it made in May, 1876, and the defendants insist that the creditors' bill cannot now be reopened for the benefit of the plaintiffs.

" 6. That in the petition to reopen the creditors' bill, several causes of action, distinct and separate from each other, were improperly and illegally joined.

" 7. That the plaintiffs' alleged cause of action, did not accrue within ten years next preceding the commencement of this action.

" 8. That the plaintiffs alleged cause of action, did not accrue within seven years next preceding the qualification and advertisement of the administrator, (January 15th, 1873), and the commencement of this action.

" 9. That more than seven years have elapsed since the bringing of the general creditors' bill, (April 27th, 1876), and the settlement of the estate, (May 9th, 1883), and the commencement of this action, (June 29th, 1883).

" 10. That from the lapse of time, from the administration of the estate of M. McKinnon, and the bringing of this action, the action or proceeding is barred by the statutes of limitation protecting dead men's estates.

"11. That by the action upon the alleged note, commenced June 6th, 1883, and application for injunctive relief therein, it is a legal discontinuance of any rights the plaintiffs may have had in this or any other proceeding, and the plaintiffs cannot therefore maintain this action.

"12. That the plaintiffs did not exercise due diligence in maintaining their alleged right, but were guilty of laches and cannot therefore maintain this action.

"13. That the Clerk of the Superior Court, when this action was first commenced, had no jurisdiction therein. [1] Because the original creditors' bill of Warden and others, had been transferred from his jurisdiction. [2] Because the Clerk cannot re-open a case for the purpose of impeaching a decree, as the plaintiffs' petition asked him to do ; nor restore a lost record ; nor set up or restore a note alleged to be lost ; nor grant relief for mistake, inadvertence or surprise under §133, because there was no judgment against the petitioners to be relieved of, and the action had already been removed to another Court of superior jurisdiction ; nor order a sale of real estate to pay an alleged indebtedness, the legal existence of which is denied, nor re-open, modify, or rescind the decrees heretofore made in the settlement of defendants' intestate's estate, by petition, or otherwise in this action."

The appellees, in their petition to "re-open and rehear" the special proceeding above mentioned, among other things alleged :

"13. That on the 14th March, 1883, an *ex parte* proceeding was had by the said Narcissa McKinnon, administratrix *de bonis non*, of Murdock McKinnon, dec'd, and H. B. Butler and wife Narcissa, (formerly McKinnon,) Susan T. McKinnon, Martha McKinnon and William H. McKinnon, distributees of the estate, as well as the heirs-at-law of said Murdock McKinnon, in the nature of a final settlement before the Clerk of this Court, each of the five distributees, (the administratrix and widow included), received $15.79 as distributive share of balance of personalty on hand, to-wit, in all, $78.95, receipting for the same.

That of this *ex parte* proceeding, the petitioners had no notice whatever, nor did their counsel. It was filed in the office of Judge of Probate of Cumberland county, approved and recorded May 9th, 1883.

"14. That the children and heirs-at-law of said Murdock McKinnon, to-wit: H. B. Butler and wife Narcissa, (formerly McKinnon,) Susan T. McKinnon, Martha McKinnon and W. H. McKinnon, who are all of age and resident in Cumberland county, filed an *ex parte* petition for the sale of part of the real estate of the deceased, for partition, on May 9th, 1883, in this Court, before the Clerk, and obtaining a decree for that purpose, and their attorney, T. H. Sutton, Esq., was appointed commissioner to conduct the sale, who has advertised a sale for cash, of a valuable brick store on Person street in Fayetteville, which is the only real estate not subject to the widow's dower, estimated value as per tax list $1,000.

"15. That the remaining real estate, all subject to the dower of Mrs. Narcissa McKinnon, widow of said Murdock McKinnon, which has been laid off to her, is a store house on Person St., estimated value, as per tax list, $1,000; a residence on Russell Street, Fayetteville, estimated value as per tax list, $750; a house and lot on Kennedy Street, Fayetteville, estimated value as per tax list, $400, of all which Murdock McKinnon died seized.

"16. That on hearing of these *ex parte* proceedings by the administratrix, and the distributees, by which the personalty was disposed of, to-wit: the balance of money on hand, $78.95, and of the *ex parte* proceeding in which the heirs purpose to dispose of the only piece of unincumbered real estate, the first notice they, the petitioners, had of either proceeding, was after having their attention called to the advertisement of Mr. Sutton, as commissioner, published in the Fayetteville Observer, dated May 9th, 1883, these petitioners, who are both females, living in Raleigh, through their agent, C. C. Barbee, on the 6th of June, 1883, made a personal demand on Narcissa McKinnon, administratrix of Murdock McKinnon, for the said debt due the estate of their

testatrix, giving her a full explanation of the circumstances, which demand she failed to comply with."

The following issues were submitted to the jury, and to the first they responded "Yes," to the second "No," to the third "Yes," to the fourth "No."

"1. Did Murdock McKinnon execute the note under seal mentioned in the first article of the complaint?"  "Yes."

"2. Has said note been paid in whole or in part, and if in part, what part and when?"  "No."

"3. Has said note been lost?"  "Yes."

"4. Has plaintiffs' claim been barred by the statute of limitation?"  "No."

The following is a copy of the material parts of the case settled upon appeal to this Court:

"After hearing the affidavits, and argument of counsel, upon the facts found by the Clerk and adopted by this Court, and upon defendants' motion that the presiding Judge proceed to find the facts, upon the affidavits, the Court declining to find any other facts, it was considered and adjudged, that the order of the Clerk be affirmed, and that a jury be empannelled to try the issues raised by the complaint and answer heretofore filed.

"To which defendants except."

The following special instructions were asked by defendants, which were refused, and defendants excepted :

"1. That the filing of the copy of the note with the Clerk, in the creditors' bill of W. Warden and others, is not such a filing as is required by law, and that the present claimants did not thereby become parties to this action, so as to prevent the statute of presumption of payment from running against the note, or that of limitations.

"2. That even if this were not so, still, the claimants must bring their suit within one year from the time when this suit was dismissed, and there is no evidence that this has been done."

The presiding Judge charged the jury as to the first issue :

" 1. That while there was no testimony that any one saw McKinnon execute the note; there was the testimony of Shaw, Barbee, and perhaps others, that they knew his handwriting; and there was no testimony to the contrary.

" 2. That in this case, there was no presumption of payment under the statute; the presumption from the note being in the plaintiffs' possession, was rather that it had not been paid. The defendants relied upon circumstances offered, particularly upon an account found in M. McKinnon's book against Mrs. Barclay, but the Court thinks that this was not even a circumstance to go to the jury on this issue. On the whole, there is no testimony to leave to you on which to say the note has been paid.

" 3d issue. If the jury believe the testimony, they must answer ' yes.' "

There was judgment for the plaintiffs, and the defendants appealed to this Court.

*Mr. R. P. Buxton,* for plaintiffs.
*Mr. John Gatling,* for defendants.

MERRIMON, J. (after stating the facts). It must be remembered that this is a special proceeding, brought in the Superior Court, before the Clerk thereof, by creditors, against an administrator, "to compel him to an account of his administration, and to pay the creditors (of his intestate) what may be payable to them respectively," as allowed by the statute (Bat. Rev., ch. 45, §73). The jurisdiction was that of the Court—not that of the Clerk. The latter acted as and for the Court. If there were exceptions to his decision, upon questions of law, an appeal lay to the Judge, and the decision of the latter became that of the Court. If in the course of the proceeding, issues of fact were raised, then the case was to be transferred to the civil issue docket, to the end that the issues may be tried in Term, under the supervision of the Judge. The issues being tried, and any questions of law arising before the

Clerk, and decided by him, and there being an appeal from his decision, and that affirmed or reversed by the Judge, then it was the duty of the Clerk to proceed, in the course of the proceeding, according to law, without a *procedendo*, or any order remanding the proceeding to the Clerk. This is so, because the jurisdiction is that of the Court, and not that of the Clerk. There is but one jurisdiction—that of the Superior Court. The Clerk, in special proceedings, superintends the pleadings, and makes all orders and decisions in respect thereto, and all orders, and judgments in the course of the same, subject to the right of appeal mentioned, except in such respects, as to which action must be taken in Term, or before the Judge, as the statute directs. The Code §§251 to 257. *Brittain* v. *Mull*, 91 N. C., 498; *Jones* v. *Desern*, *ante*, 32.

In this case, the complaint having been filed, it was the duty of the Clerk to advertise, as directed by the statute, for all creditors of the intestate of the administrator, to appear before him on or before the return day, and file the evidence of their claims, and it then became the right of the creditor, and he was required so to do, to file his demand with the Clerk, as directed by the statute, if he would avail himself of the benefit of the proceeding. If the claim of a creditor was contested, then, in a proper way, it was to be put in question, as by complaint and answer, and if issues of law were raised, the papers were to be sent to the Judge; if issues of fact were raised, these were to be sent to the next term of the Court for trial. Bat. Rev., ch. 45, §§73 to 84. These sections apply to this particular kind of special proceeding, and are slightly different from the provisions of the Code of Civil Procedure, applicable to such proceedings generally.

The procedure, in respect to claims so contested, is of, but only incidental to, the special proceeding, and although such incidental litigation of a contested claim may be ended, this does not terminate the proceeding—it continues until all claims presented by creditors shall be settled and discharged according to law, in its

course, and there shall be a final judgment. Sundry creditors presented their respective demands to the Clerk, and it seems that all these, except one presently to be mentioned, were contested by the former administrator, and by his successor, the present administratrix, and the litigation lasted for several years. The termination of this litigation did not end the proceeding. It could only be ended regularly, after all the debts presented had been paid, if there were sufficient assets for that purpose. The appellees presented and filed with the Clerk their demand, shortly after the special proceeding began.

The Clerk, as and for the Court, and the Judge upon appeal, found as a fact, that they filed the bond in question with the Clerk, and the latter took note of it. This was sufficient to entitle the appellees to take benefit of the special proceeding. The filing of the claim was sufficient to give them standing as creditors in Court; that, indeed, was all they were required to do, if the claim was not contested, as it seems at first, it was not. The claim being filed, the special proceeding could not be properly terminated, until it had been paid. The long pendency of the proceeding, cannot be allowed to prejudice the appellees, because the Clerk failed to take, state and report an account of the dealings of the administratrix with the estate; nor was any notice given them, as the statute required. They had the right, under the statute, to expect the account to be taken and reported by the Clerk, and notice to be given them of the same.

It does not appear from the record, that the special proceeding ever was terminated. There was no report of an account taken and stated, nor any notice given of such account, as the statute directed, nor was there any final judgment. It seems that it was simply allowed to be left off the current docket of proceedings. The appellants suggest in their answer, that it was "dismissed," but no order of dismissal appears in the record, and it must be taken there was none. There was no necessity, therefore, for the petition of the appellees to "reopen and rehear" the special proceeding. If it had been improvidently dropped

from the current docket of the Court, a simple motion ought to have been made, to bring it forward and before the Court, to the end it might be determined according to law.    But the petition might be, indeed, was, treated as in effect such a motion, and the facts appearing as the Clerk found them to be, it was competent and proper for the Clerk to make the order to bring forward the proceeding, and allow the appellees to assert their rights as creditors therein, as in effect he did.

The appellants certainly were favored in being allowed, under the circumstances, to contest the existence of the bond in question, and to insist that it had been paid, or was barred by the statute of limitation, &c.    The administrator ought to have contested the claim at first, if he intended to do so.    The evidence sent up as part of the case on appeal, shows plainly, that he had notice of it, and that it had been filed.    To contest it seems to have been an afterthought.    Strictly, the appeal from the order of the Clerk, bringing forward the proceeding, &c., ought to have been heard and determined, before the pleadings—the complaint and answer—putting the demand of the appellees in issue, were filed; but as these pleadings were filed, and there was no objection made on this account, it was competent to dispose of the appeal, and try the issues of fact raised by the pleadings, at the same time in Term, as was done; because the Court had general jurisdiction of the matter, and the particular form and order of procedure was not essential, if the parties did not object.

The appellees, by filing the bond in question in the special proceeding, became identified with and of it, as creditors of the estate of the intestate, and time ceased to run against the bond, after the commencement of the proceeding.    *Dobson* v. *Simonton*, 93 N. C., 268.

The proceeding began in the month of April, 1876.    The bond was due on the 17th of May, 1860.    So that it is obvious that no presumption of payment of it arose.

The time from the 20th of May, 1861, to the 1st of January, 1870, being excluded, ten years did not elapse next after the

maturity of the note, and before the commencement of the proceeding. It is likewise obvious, that the statutes relied upon as a bar to the rights of the appellees, could not have such effect. The bond in question was in, and of, and protected by the proceeding, from and continually next after it was filed therein.

The next-of-kin, and the heirs-at-law of the intestate, were before the Court, and pleaded, and it appears that they all have an interest in the proceeding. There is, therefore, no reason why they may not be held to account to the appellees in this proceeding. It appears that the next-of-kin appellants, received some part of the personal estate of the intestate in 1883. To this they were not entitled, while the debt in question was unpaid. They must, therefore, be required to account for the distributive shares received by them respectively. If this shall not be sufficient to pay the debt due the appellees, and proper costs, then so much of the money, the proceeds of the land sold or partitioned among the heirs-at-law of the intestate, as may be necessary, must be applied to the payment of the debt and costs, unless it shall appear that the real estate of the intestate was not, for some good cause, that may be shown, liable to make assets to pay debts.

It will be observed that this special proceeding is equitable in its nature, and the Superior Court has general jurisdiction of the parties, and the whole subject matter of the proceeding, including the next-of-kin and the heirs-at-law of the intestate, in respect to the personal and real estate of the intestate that has come to them respectively, and is necessary and liable to pay, and to make assets to pay, debts. The Court may, therefore, in this proceeding, compel the next-of-kin to account for the personal property received by them first, and, if need be, order the land to be sold to make assets to pay debts, if the same is so liable. If the heirs who have sold the land are before the Court, and have the proceeds of the sale, the Court may direct an appropriation of the same as assets, if it shall appear that the land was liable. Where the jurisdiction of the Court is complete, there is no reason why this may not be done, and indeed

it ought to be done, with a view to avoid circuity of action, economize costs, and facilitate the administration of justice. The Court will be careful, however, to see that no prejudice or injustice is done to any party by reason of such procedure.

The record is very voluminous and confused, and we have found it difficult to see clearly the scope and bearings of some of the appellants' numerous objections and exceptions, not clearly specified, but we think we have in effect disposed of all of them.

The judgment of the Superior Court must be so modified as to conform to this opinion, and to that end let the opinion be certified to the Superior Court. It is so ordered.

Modified and remanded.