J. S. FLEMING et al T. H. STROHECKER et al.

*Parol Trust—Estoppel by Record—Issues.*

1. Where land was sold under judicial proceedings and the purchaser died before title was executed to him and the owner of the land (the defendant in the proceedings) in open court consented that the deed should be made to the heirs of the deceased purchaser, he is estopped, in an action by the heirs of such purchaser for possession of the land, to claim that the deceased purchaser bought the land under an agreement to reconvey to him on payment of the amount bid.

2. Where, in such case, the owner set up an alleged parol trust by one of the heirs of the purchaser that he should have the land upon payment of the amount bid by the ancestor, proper issues should have been submitted to the jury on the proof offered as to the alleged agreement of the one heir raising a trust to the extent of such heir's share in the land.

This was a civil action tried before *Norwood, Judge*, and a jury, at August Term, 1895, of IREDELL Superior Court.

The plaintiffs brought an action of ejectment to recover possession of a certain tract of land.    The defendant, G. W. Kerr, in his answer set up a parol trust in the ancestor of plaintiffs, alleging that previous to the sale of the land in question in 1871 by C. L. Summers, commissioner, Robert White, the ancestor of plaintiffs, agreed with him, the said Geo. W. Kerr, that he would attend said sale and purchase said land for said Kerr, and that he would convey the same to Kerr whenever he should repay the amount bid for said land at said sale : that in accordance therewith said White did bid off said land in his own name for $215, and that Kerr has paid a part of said purchase money, to-wit, $89, direct to said commissioner, and had paid the balance of said purchase money to said Robert White.

That in 1886, long after the death of said White, some of the plaintiffs—his heirs-at-law—agreed with Kerr that if he would consent to a decree being made in the original case in which the land was sold, that the legal title should be conveyed to them, the said heirs-at-law, that they would thereafter upon the payment to them of the difference between $89 and $215, make him a deed in fee simple to said land; that in pursuance thereof said Kerr allowed such judgment to be made in said cause authorizing the legal title to be made to the plaintiffs, and that soon thereafter he tendered them the amount due under said compromise and they refused to accept the same or to make him a deed.

The defendants tendered the following issues which his Honor refused and defendant excepted:

" 1. Is the plaintiff the owner of 15¾ acre tract described in the 3rd paragraph of the complaint ?

" 2. Did R. R. White purchase the lands in controversy at the sale thereof by C. L. Summers, commissioner, for $215 for G. W. Kerr under parol agreement to hold the same for Kerr and convey the same to him upon the payment of said $215 purchase money ?

" 3. Did said Kerr consent to the decree in said case in 1886, with the heirs-at-law of said White under a like agreement ?

" 4. How much of said purchase money was paid by Kerr in his lifetime ?

" 5. Did the said Kerr, through his agent, tender to the heirs-at-law of White the balance of said purchase money in 1886 ?"

The Court submitted the following issues :

" 1. Are the plaintiffs the owners of and entitled to the 25 acre tract ?

" 2. Are the plaintiffs the owners of and entitled to the 65 acre tract or any part thereof, and if so what?

" 3. What damages. are the plaintiffs entitled to recover ?"

The defendant requested the following instructions which were refused.

" 1. That if the jury believe that R. R. White, ancestor of plaintiffs, contracted and agreed with G. W. Kerr, prior to the Commissioner's sale in 1870 or 1871, to purchase the land in dispute at said sale for said Kerr and to take and hold the legal title to said land and hold the same for Kerr until Kerr should pay him back the purchase money, then the defendants in this action are the equitable owners in fee of said land and they should answer the first issue No.

" 2. That if the jury shall find the facts stated in first prayer to be true then the judgment in 1886 is not inconsistent with the equitable title of defendants and would not have the effect to defeat the same.

" 3.   If the jury shall find that G. W. Kerr consented to the judgment and deed in 1886 making title to the plaintiffs, heirs of R. R. White, upon the understanding and agreement with them, or any of them, that the plaintiffs were to take and hold the legal title to said land under said decree and deed until Kerr should pay to them the balance of the purchase money as agreed, then they should find that the defendants are the equitable owners of the land and shall answer the issue 'No.'

" 4. While it is true that it is necessary in order to establish a parol trust in land that something more than the simple declarations of the persons sought to be charged therewith is required; and while it is true that there must be proof of acts inconsistent with the purpose on his part to purchase and hold the land for himself absolutely,

still, if the jury find as a fact from the evidence that G. W. Kerr remained in possession of said land until his death, claiming it as his own, cultivating and receiving the profits of the same, returning the same for taxation as his own, and that the plaintiffs allowed and permitted this, that these facts are *dehors* the deed. (And are inconsistent with plaintiff's claim for title and are sufficient to comply with the rule of evidence that the proof must be clear, strong and convincing.)"

The plaintiffs prayed for the following instructions which were given:

"3. And if the defendant Kerr should convince the jury by proof clear and convincing, that he had such contract with the plaintiffs to re-convey to him, and the jury should find and be satisfied that it was also understood and agreed that such re-conveyance to Kerr was to be made upon condition that he pay the purchase money for the land before he can invoke the aid of a Court of Equity, he must do equity and comply with his alleged agreement by paying for the land.

"4. But to establish the trust which the defendants set up and rely on, it is necessary for the agreement between Kerr and the plaintiffs—the White heirs—allowing the defendant Kerr to redeem, as the defendants contend, it is necessary for such agreement to have been distinctly made and entered into between the plaintiffs, all of them, and the defendant Kerr *before* the deed was executed to the plaintiffs : for any agreement since then not in writing is insufficient, even if such had been made, and if made with one and not with the others, it is not binding on any except Kerr, the contracting party, and in considering whether there was such parol agreement the jury should consider the lapse of time and the reasonableness of long delay on the part of Kerr in carrying out his alleged agreement."

117—24

His Honor charged the jury, among other things, that according to the old practice as it existed before the adoption of the new Constitution in 1868, only legal defences could be made to legal actions—that if one should have an equitable defence he was not allowed to set it up and thus defeat the legal title, but the defendant was forced to submit to the plaintiff's recovery at law and then go into a Court of Equity and enjoin the enforcement of the judgment at law. But that now law and equity are administered by the same Court.

"2. There is a difference between an equitable estate and equitable right. If the defendant, G. W. Kerr, has not paid the full amount of the purchase money he contracted and agreed to pay, he has an equitable right merely but not an equitable estate. An equitable estate would be a good defence to this action but an equitable right is not. If neither G. W. Kerr nor his heirs or assigns have paid or tendered the money for the land, the defendants will have to go out of possession and assert their rights, if they have any, after payment of the purchase money according to agreement.

"3. If the jury find the parol contract claimed by plaintiffs to have been made with R. R. White, and if they shall further find that G. W. Kerr, deceased, paid or tendered all the money either to R. R. White or the Clerk Summers, then the plaintiffs are not entitled to recover, and you should answer the first issue 'No.'

"4. If the jury find there was no such contract with R. R. White, or there being such a contract, that all the purchase money was not paid, neither by G. W. Kerr nor his heirs nor assigns, then the plaintiffs are entitled to your verdict unless you find contract such as could give rise to the trust claimed with R. R. White and payment or tender by Kerr, &c., of the purchase money."

There were other instructions by his Honor as to the burden of proof, the quantum of evidence and upon other points, which instructions were not excepted to by defendants and hence is not set out here.

There was a verdict for the plaintiffs as set out in the record. Judgment by his Honor. Motion for a new trial, assigning as errors refusal to admit defendants' issues ; the submission of plaintiffs' issues ; instructions of his Honor in paragraphs 2, 3, 4 and 5 of his charge as set forth ; refusal to instruct the jury as prayed for by defendants in their prayers for instruction, numbered 1, 2, 3, 4. Also for instructing the jury as prayed for by the plaintiffs in their prayers for instructions numbers 3 and 4.

The motion was overruled and defendants excepted and appealed.

*Messrs. Robbins & Long*, for plaintiffs.
*Messrs. Clarkson & Dula* and *Armfield & Turner*, for defendants (appellants).

MONTGOMERY, J.: G. W. Kerr, now deceased, formerly a defendant in this action, agreed in writing with one Thomas to purchase the tract of land which is the subject of this action. Kerr, failing to comply with his agreement, the executor of Thomas and his heirs-at-law commenced proceedings against him in the Superior Court of Iredell county at its Fall term, 1870, to have the land sold for the payment of the purchase money due under the agreement. Judgment was had against the defendant, G. W. Kerr, for the amount due, to be paid on a day certain, and upon failure of payment the land to be sold by the clerk of the court, as commissioner, at public auction after legal advertisement. The sale was advertised under the decree to be

made on the 21st of January, 1871, when R. R. White, the father of the plaintiffs, became the last and highest bidder at the price of $215.   R. R. White died before the proceedings were concluded.   At February term, 1886, of Iredell Superior Court, the clerk who was appointed to make sale of the land made report to the court that he had collected the purchase money and was ready to make title, but that the purchaser was dead, leaving the plaintiffs his heirs-at-law.   Whereupon, an order of court was made that the commissioners make title to the land to the heirs-at-law of R. R. White, the deceased purchaser, the plaintiffs in this action.   The defendant G. W. Kerr, personally appeared in open court and assented to the decree and order.   The deed was duly and properly executed under the order.   The present action was commenced against Kerr and the other defendants, who claim under him, by recent conveyances.   The defendant Kerr had died since the commencement of this suit and after he had conveyed to the other defendant T. H. Strohecker the tract of land in dispute, and his heirs-at-law have been made parties defendant in this action.   The defendant Kerr denied the right of the plaintiffs to recover, and set up title in the other defendant, his grantee, by virtue of his deed to him, and alleging his right to convey to be founded on a parol trust concerning the land, to the effect that the father of the plaintiffs, at the request of Kerr, bought the land under the judicial sale of 1870 and agreed to hold it in trust for him (Kerr) and to convey it to him when he should pay him (R. R. White) the purchase money.   The defendant Kerr in his answer set up also a second parol trust which he alleges was entered into between him and all of the plaintiffs at the time of the rendition of the judgment and decree of 1886, to the effect that the plaintiffs agreed with him that if he would consent to the judgment they would

hold the land in trust for him, and on the payment by him to them of the purchase money which their father paid for the land, $215 less $89, which he alleged he had paid to the plaintiff's ancestor under his parol trust with him, they would convey the land to him, Kerr. The other defendants adopted this defence of defendant Kerr. His Honor allowed testimony to be offered going to show both of these alleged trusts.

Proof of the first ought not to have been allowed to set it up; although competent testimony (not Kerr's) might have been admitted concerning it to corroborate testimony going to show the second trust. The defendants are clearly estopped by the judgment and decree of 1886 for the plaintiffs in that action, and the defendant Kerr, knew that the parol trust with the ancestor, which he seeks to set up here, was directly in question in that proceeding, and he ought to have set it up then and there. As he did not, he is concluded by the record made against him. *Jones* v. *Coffey*, 97 N. C., 347. The main and principal and only question before the court, when the decree of 1886 was made, was, to whom should the title of this land be made, the purchaser being dead? The defendant came into open court and unequivocally gave his express consent that a decree might be made ordering the commissioner to make the deed to the plaintiffs, in this action, absolutely. This is an agreement entered into openly in the presence of the court by the defendant and the plaintiffs in that action and the plaintiffs in this being the privies of the plaintiffs in that, whatever is entered of record, the court acting and pronouncing judgment thereon, neither the defendant nor his privies can afterwards deny. The record and the facts given in the record must be true as to all concerned. *Williams* v. *Clouse*, 91 N. C., 322; *Johnson* v. *Pate*, 90 N. C., 334. Whatever error therefore the defendants may allege

as to the ruling of his Honor in reference to the first alleged parol trust, is harmless, for it ought not to have been submitted to the jury as an issue.

We have examined the record carefully as to the testimony introduced for the purpose of proving the parol trust alleged to have been made with all the plaintiffs at the time of the decree, made in 1886. Kerr's testimony (by deposition) is as follows: "I concluded to pay their claim and let my debt go at that time. I did not know whether I could bring that in or not. I wanted a deed to the land and Mrs. Fleming was the administratrix of the estate and said she had no deed and could not give one without she had a deed. I told her I would help her get a deed and to give me one. She said she and Mr. Fleming would arrange to give me a deed. They claimed the balance of the purchase money and I thought the deed was to be made to her as administratrix and not to the heirs. I went there with the money and offered it to her and Mr. Fleming and they would not take it. In a short time after that they got that deed and they promised to give me a deed and never did it. Agreeable to what was said I tendered the money after they got the deed, according to contract. I did not see all of the White heirs, but that was the agreement I had with Mr. and Mrs. Fleming. In fact I did not know them all—the White heirs."

There is not a particle of testimony given by any other witness tending to show that any of the plaintiffs, except Fleming and his wife, had any part in or knew any thing of the alleged trust, and his Honor would have been authorized to instruct the jury that if they believed the testimony they should find for their verdict that the plaintiff Pinckney A. White was entitled to recover one-third of the land, and Nannie E. Eagle, Annie D. Bailey and W. A. White to recover one-third between them. The

FLEMING v. STROHECKER.

judgment of the court below is therefore modified to this extent, and affirmed as to the rights of the said Pinckney A.White, Nannie E. Eagle, Annie D. Bailey and W. A. White.

As to the alleged trust with the plaintiffs at the time of the judgment and decree, made in 1886, so far as the same may affect the interest of Fleming and his wife in the land, the matter should have been submitted to the jury on the proof offered, with a proper application of the legal principles involved, which his Honor did not do in the instructions which he gave. He committed no error, however, in refusing the instructions which the defendants requested, as they were framed. The issues submitted were not the best, but, owing to the latitude his Honor allowed in the examination of witnesses, the whole case was developed and no harm came to the parties through the issues submitted. The legal title to the land having been admitted to be in the plaintiffs, it would bave been better to have submitted proper issues on the alleged trust set up by the defendants at the time of the judgment in 1886. The judgment as herein modified is affirmed, but for the error as to the failure of his Honor to properly instruct the jury, concerning the alleged trust set up by the defendants, so far as it affected the interest of Fleming and his wife in the land, there must be a new trial as between Fleming and his wife and the defendants.

New Trial.