THOMAS H. BATTLE, Adm'r, v. M. A. DUNCAN and others.

*Executors and Administrators—Parties to petition to sell land for assets.*

1. In a petition to sell lands for assets to pay debts, a mortgagee of the interest of one of the heirs-at-law was improperly admitted a party defendant. Such claims cannot be set up in this proceeding.

2. When the administration is complete and the fund to be distributed is ascertained, the mortgagee may prefer his claim to the real estate fund ; and an assignee of the next of kin may also assert his in the distribution of the personal estate.

APPEAL from an order made at Chambers on the 22d of January, 1884, by *Philips, J.*

The defendants appealed.

*Messrs. Battle & Mordecai* and *T. H. Battle,* for plaintiff.
*Messrs. Gatling & Whitaker, Gilliam & Son* and *J. B. Batch-elor,* for defendants.

SMITH, C. J.  F. C. Pittman, as executor of James C. Knight, filed in the superior court of Edgecombe, before the clerk, his petition for the sale of certain lands therein described, devised by the testator to the defendant Martha A. Duncan, his daughter, for life or widowhood, and in remainder one-third to the plaintiff, one-third to the defendant Alla W., wife of the defendant John H. Burnett, and the remaining third to the defendants R. E. Duncan and Paul F. Duncan, as tenants in common.

Service having been made upon the devisees and all having put in answers, judgment was rendered in December, 1875, granting the application and directing the executor to make sale of the lands for their conversion into assets to be used in a due course of administration.  The lands were accordingly put up at public sale and bid off at the sum of $2,500 by one W. D. Pittman, but deeming the price entirely inadequate, the executor made no report thereof until the purchaser raised his bid to the sum of $5,000, when, in January, 1881, the sale was reported at the enlarged price and confirmation recommended.

On June 29, 1882, notice having been issued to the defendants to show cause why the price offered should not be accepted, and none being shown, the sale was confirmed and the plaintiff ordered to apply a sufficient amount of the proceeds to the payment of the testator's debts, for which his personal estate was deficient, and to hold the residue as real estate for the parties entitled.

And it was also adjudged that on payment of the residue of the purchase money, for which notes on time had been taken as required in the decree of sale, the plaintiff make title to the purchaser.

In August, 1883, Frank B. Dancy filed an affidavit in which he states that on January 2d, 1878, the plaintiff and wife and

the defendants Martha A. and R..E. Duncan, united in convey-
ing by mortgage deed their several interests in the devised lands.
to N. J. Pittman, affiant's guardian, to secure a debt due for
money loaned to the trust fund in his hands, in amount about
$1,400, which, on arriving at full age, had been surrendered to.
him.

He further states therein that the purchaser is ready and will-
ing to pay what he yet owes, on having title to the land conveyed
to him, and demands that out of the shares of the moneys paid
in, belonging to the mortgagors, so much shall be applied as is.
necessary to the discharge of the secured debt, and that he may
be admitted as a party defendant.

It was on September 1, 1883, ordered that the said Frank B.
Dancy be made a party to defend his rights under the mortgage.
From this order the plaintiff appealed, but upon the hearing
before the judge the ruling was affirmed.

On the same day citation issued under the statute against the
executor, who had failed to render his final administrtion account,.
and on September 12, it was further adjudged that he give
security for the fund, and notice given that upon his failing to
do so his letters testamentary would be revoked and himself
removed from office. C. C. P., §479; THE CODE, §1400. From.
this order the executor also appealed, but the action of the clerk
was approved and sustained by the judge.

Not having complied with the order, on February 6th, 1883,.
the letters were recalled and the office vacated and Thomas H.
Battle appointed administrator in his place, and substituted as.
plaintiff in the proceeding; the removed executor associated with
the defendants, as a devisee, and ordered to deliver the funds
derived from the sale, amounting to $3,000, with interest, to his.
successor in office, and further, that when the debts were dis-
charged the administrator should convey the title.

The executor having filed an account of the fund, showing
that large sums alleged to have been paid to the devisees were ·
all disallowed by the clerk.

After notice to the several parties, the defendants J. H. and Ella W. Burnett are ordered to deliver to the administrator a bond for $1,333⅓ which the executor had endorsed and delivered to her, of which $1,000 had been paid.

The executor assigned the $2,000 bonds of the purchaser of the land, one to F. H. Whitaker, in March, 1881, and the other to Spier Whitaker, in December of same year, both for a valuable consideration, and on his representation that there were no debts of the testator outstanding.

The executor endorsed a bond for $662⅔ to the defendant, Paul P. Duncan, who kept it a few weeks and placed it in the custody of the executor, to be kept for him. While in possession of the infant $50 was paid on it.

On the death of Paul P. the defendant J. H. Burnett became his administrator and demands from the executor the return of the deposited bond.

In the final ruling it is ordered, of course with a view of recovering the transferred securities, that the assignees, F. H. Whitaker and Spier Whitaker and the said John H. Burnett, in his capacity as administrator of Paul P. Duncan, be severally made defendants.

The several rulings affirmed in the judgment of the superior court are before us upon appeal for our examination and determination.

In the controversies, with their complications, which have grown out of the action in its progress and the various interpretations and orders allowed, we can scarcely recognize its original aspect and purpose, as a means simply of converting land into money and providing further needed assets in completing administration of the debtor's estate.

The funds derived from this source, received by the personal representative, constitute a part of the general assets to be accounted for and paid over to the party entitled in the final distribution of what remains unused. The only difference between assets furnishsd from the personal and real estate, is in the per-

sons entitled to receive them—the next of kin or legatees in one case, the heirs-at-law or devisees in the other. And as the assignee of the former class must assert his claim in the distribution of the personal, so must the mortgagee prefer his when the real estate fund is to be paid over to those of the latter class. Both may be present to protect their respective claims to the funds when the administration is complete and what remains is to be disposed of.

The removal of the executor was in the exercise of a power confided to the clerk, acting as probate judge (THE CODE, §§1518, 1519, 1520), as was the appointment of an administrator in his place (§1521), and this required the change of parties in the unfinished action which was then made.

It was equally proper to order the displaced executor to surrender such of the funds as he then had and to modify the former order, so as to impose on his successor the duty of conveying the land to the purchaser when he had completed his payments therefor.

The pendency of the action rendered these orders legitimate and proper and tending to facilitate its termination. Beyond this, the clerk could not go without changing the character of the proceeding and introducing matters foreign to the cause and controversies and equities appropriate to a different tribunal.

The administrator has his remedy against the executor personally, and he was the proper person to sue for the unadministered assets, as if the executor had died without completing his work. So, too, the administrator could only pursue the assignees if they participated in the maladministration, in a separate and independent suit admitting any defence which they could set up against the demand. But these remedies were not capable of being sought in the collateral manner attempted, and as incidental to a proceeding which has accomplished its object when the representative possesses himself of the funds and the title has been made to the purchaser.

So far, then, as the orders attempt to make new parties, as

assignees and claimants of the funds, or as mortgagee and creditor, they are reversed and declared erroneous, as are also the rulings that the devisees defendant surrender what has been assigned to them, and the judgment is in other respects affirmed. Let this be certified.

Judgment accordingly.